UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Xanadu Media LLC, Corporation,

        Plaintiff,

v.

EDGE DATA SOLUTIONS,
Daniel Wong, Individually,
Delray Wannemacher, Individually,
and Clay Seibert, Individually,

        Defendants.

Case No. _____-cv-_____ (___/__)

**COMPLAINT**

**JURY TRIAL DEMANDED
UNDER FED. R. CIV. P. 38(B)**

---

For its Complaint, Plaintiff Xanadu Media, LLC. ("Plaintiff") states and alleges as follows:

## INTRODUCTION

1.   This is an action for money damages arising out of Defendants Edge Data Solutions, Daniel Wong, Daniel Wannemacher, and Clay Seibert's breach of contract and fraudulent misrepresentation during negotiations from 2021 to 2022 with Plaintiff Xanadu Media LLC regarding the purchase and delivery of Bitcoin mining equipment, immersion cooling solutions, and related services

## PARTIES

2.   Plaintiff Xanadu Media LLC is a Minnesota corporation registered with the Minnesota Secretary of State, with its principal place of business in Minneapolis, Minnesota. Plaintiff is engaged in the operation of a Bitcoin mining data center and is owned by Andrew Schumacher, who resides in Minneapolis, Minnesota.

1

3.    Defendants Edge Data Solutions, and individuals Daniel Wong, Daniel Wannemacher, and Clay Seibert are collectively involved in the brokering and provision of liquid immersion equipment for the Bitcoin-mining industry. Edge Data Solutions is a Delaware corporation with its registered offices located at 3 Alliance Center 3550 Lenox Road NE, 21st Floor Atlanta, Georgia 30326.

## VENUE AND JURISDICTION

4.    This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, (diversity jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

5.    Venue is proper under 28 U.S.C. §1391(b)(1), (2) and (e)(1)(A), (B), because a substantial part of the events giving rise to this claim occurred across the United States because Defendants are a virtual/remote company. In addition, a substantial part of the events giving rise to this claim occurred in Minnesota.

6.    Upon information and belief, complete diversity of citizenship exists between all parties.

7.    The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

### FACTS

8.    In 2021, Plaintiff and Defendants began negotiations for the sale of immersion cooling equipment for Plaintiff's Minnesota bitcoin mining data center. Immersion cooling systems are large tanks which hold the immersion oil necessary to cool the heat-intensive Bitcoin farming equipment. EDGE Data Solutions

9.    During these negotiations, the individual Defendants repeatedly, explicitly, and falsely held themselves out as experts in immersion-cooling technology. Plaintiff

reasonably relied on Defendants' false representations and entered into two separate

deals for immersion tanks, immersion oil, and cooling systems. The agreed-upon

payments were $136,844.73 and $101,515.00, to be made via the Bitcoin payment

network.

10.   The first product delivery, a closed-loop cooler, arrived in January 2022. The

cooler, a crucial component of the cooling system, arrived damaged and

non-functional. Defendants had failed to take the fundamental step of draining the

water from the system, causing it to freeze and destroy the product during transport.

This oversight led to a 10-month delay and significant loss of income for the Plaintiff.

11.   In addition, the equipment relating to the $101, 515.00 payment was never

delivered. The immersion oil arrived as planned, but it was useless without the

corresponding equipment. The failure to deliver the necessary equipment rendered the

immersion oil useless.

12.   After these blunders, Plaintiff investigated Defendants and discovered that

Defendants had misrepresented their expertise in liquid immersion technology and

their track record in the industry.

13.   For example, Defendants claimed to be immersion tank experts but were

actually just middlemen for tank manufacturers, lacking the relevant technical

experience in Bitcoin mining on the scale Defendants claimed.

14.   The delay caused by Defendants' failure to provide the necessary cooling

solutions resulted in serious disruption of Plaintiff's revenue.

15.   A collection of emails from Andrew Schumacher's time working at the

Defendant's corporation reveals the fraudulent activities each of the individual

Defendants perpetrated on Plaintiff (*See*, Exhibit A), including presumably other customers:

> a. Evidence that, despite their specific assurances, the Defendants had yet to even design their immersion tanks at the time the parties closed the deal;
> b. Evidence that, despite their specific assurances, Defendants never had power distribution units to sell. Power distribution units are an essential component of the immersion tanks that the Defendant "sold" to Plaintiff. When Raptor Power Systems (RPS), the manufacturer of the power distribution units, discovered Defendant's false assurances, it stepped in and notified Plaintiff that the units would not be ready for delivery until well after Defendants' promised delivery date;
> c. Evidence that the individual Defendants Daniel Wong and Clay Seibert refused to refund the money Plaintiff had paid, despite a refund clause in the contract; and,
> d. Evidence that Defendants had breached on other contracts with other third-party buyers.

## COUNT I - FRAUD
Plaintiff v. Defendants Edge Data Solution, Inc. Clay Seibert, Daniel Wong, Delray Wannemacher

16.   Plaintiff realleges each paragraph as if fully set forth herein.

17.   Defendants Wong, Seibert, and Wannemacher intentionally misrepresented their industry-specific expertise as well as the condition, certification and production status of the products Defendants were offering for sale.

18.   Defendants' obvious goal in making these materially false misrepresentations was to induce Plaintiff to close on the sale. The false statements that Defendants made included, but were not limited to the status of the products that were in their production pipeline and status of electrical certification of products. In addition, Defendants falsely claimed that they had the requisite experience in the field of liquid immersion technology, placing unique emphasis on the context of cryptocurrency mining to fulfill all desired functions and terms of the contract.

19.    Defendants intentionally withheld critical information from Plaintiff about the condition of products and the uncertain delivery timeline for the Power Distribution Units. Moreover, Defendants falsely represented that the units were UL certified at the time of sale - a requirement under the National Electric Code.

20.    Defendants had actual knowledge that their own tank supplier refused to accept bulk purchase orders that didn't meet the supplier's specified minimum quantity of units per bulk order— a figure Defendants were never close to reaching. Defendants never disclosed this information to plaintiffs during the entire course of negotiations.

21.    Defendants materially misrepresented themselves an industry-qualified organization that was trustworthy and reliable even falsely listing various certifications including: UL Listed Packaged Pumping Systems, UL Listed Controls, OSHA Compliant Safety Program, National Board, Quality ISO 9001:2015, and ITAR Certification.

22.    Defendants falsely held themselves out to Plaintiff as a trustworthy, reliable and industry-qualified organization while falsely listing numerous product certifications including UL Listed Packaged Pumping Systems, UL Listed Controls, OSHA Compliant Safety Program, National Board, Quality ISO 9001:2015, and ITAR Certifications.

23.    Plaintiffs are entitled to recovery of their costs, including reasonable attorney's fees.

**COUNT II - BREACH OF CONTRACT**

Plaintiff v. Defendants Edge Data Solution, Inc. Clay Seibert, Daniel Wong, Delray Wannemacher

24.   Plaintiff re-alleges each preceding paragraph as if fully set forth here.

25.   Defendants failed to exercise quality control on the dry cooler purchased in the first wave of immersion solutions. The dry cooler arrived dirty, broken, and decommissioned, with water pooled inside it. Defendants did not take reasonable steps to ensure the dry cooler was safe and functional for Plaintiff's use.

26.   Plaintiff paid Defendants for two waves of product shipments corresponding to the first payment of $121,824.20 in September 2021 and the second payment of $101,515.00 in June 2022. The dry cooler in the first shipment was part of an integrated system; its damaged condition rendered the remaining components unusable.

27.   Defendants' failure of performance and subsequent indefinite delay in shipping a replacement dry cooler proximally caused Plaintiff's lost profits which are calculated with near certainty, due to the mathematical nature of assessing a properly functioning Bitcoin mining unit's expected return over time. Defendants' fraudulent promises and habitual misrepresentations caused Plaintiff to incur numerous unnecessary expenses including but not limited to unnecessary rent, inspection costs, shipping costs, maintenance costs, utility costs, salary costs, etc. to be determined at trial.

28.    Defendants knowingly exposed customers to the risks of significantly delayed performance in shipment of products while Defendants scrambled to meet their own supplier's bulk order requirements and further, exposed Plaintiff to receipt of non-functional products without proper discussion, planning, consultation, or safeguards.

29.     As a direct and proximate result of such customs, patterns, and/or practices,

Plaintiff sustained injuries and damages as alleged above.

### COUNT III: IMPLIED WARRANTY OF MERCHANTABILITY
Plaintiff v. Defendants Edge Data Solution, Inc. Clay Seibert, Daniel Wong, Delray Wannemacher

30.     Plaintiff re-alleges each preceding paragraph as if fully set forth here.

31.     Defendants are merchants involved in the sale and servicing of products such

as Plaintiff's purchased system, and Defendants were aware of Plaintiff's reliance on

the Defendants' knowledge and unique experience employing immersion cooling

technology in the context of Bitcoin cryptocurrency mining operations.

32.     Implied in the Defendants' sale of Plaintiff's purchased system was a warranty

that it would be merchantable and meet the specifications represented by Defendants

including performance.

33.     Plaintiff's purchased system was defective because it was not reasonably fit for

both the uses intended and reasonably foreseeable by Defendants.

34.     Plaintiff's purchased system is not fit for the use intended by the Plaintiff and

advertised by Defendants, namely, to efficiently mine Bitcoin cryptocurrency and in

fact, was never functional in any way.

35.     Plaintiff's purchased system was defective for its intended and reasonably

foreseeable uses.

36.     Plaintiff justifiably relied on the Defendants' representations about the product

when agreeing to purchase and use Defendant's Immersion Cooling System to mine

Bitcoin cryptocurrency.

37.    The Defendants received notice of the breach of warranty throughout the entire under-performance and non-performance of Plaintiff's purchased products, including receipt of a critically damaged immersion cooling tank in seller's initial shipment and failure of seller's second shipment to ever arrive, except for receipt of ancillary items included in second order such as immersion oil, constituting a minute fraction of the contract price for seller's second shipment.

38.    The Defendants breached the implied warranty of merchantability as contained in M.S. § 336.2-314, and as a direct and proximate cause of the breach of warranty alleged, Plaintiff sustained and will continue to sustain general and special damages, including but not limited to, past and future expenses for Plaintiff's purchased immersion cooling system, lost economic opportunity from Bitcoin cryptocurrency mining or other computing uses, and other economic damages.

## COUNT IV: IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
Plaintiff v. Defendants Edge Data Solution, Inc. Clay Seibert, Daniel Wong, Delray Wannemacher

39.    Plaintiff re-alleges each preceding paragraph as if fully set forth here.

40.    Defendants are merchants involved in the sale and servicing of immersion cooling systems such as Plaintiff's purchased system, and Defendants were aware of Plaintiff's reliance on their knowledge and purported unique experience employing immersion cooling system technology in the context of cryptocurrency mining operations.

41.    Implied in the Defendants' sale of Plaintiff's purchased system was a warranty that it would be fit for Plaintiff's purpose and meet the performance and specifications represented by Defendants through sales materials such as pictures of model systems, detailed diagrams and power-point presentations.

42.    Plaintiff's products were defective because they were not reasonably fit for the specific purpose that Defendants knowingly sold Plaintiff the products for, and where Plaintiff relied on the expertise and judgment of Defendants when deciding to purchase the products.

43.    The Defendant knowingly sold the Plaintiff's purchased immersion cooling system for the specific purpose of mining Bitcoin cryptocurrency at a specific, advertised Hashrate performance with specific certifications required by the national electric code, enhanced longevity, and rapid system deployment.

44.    Of Plaintiff's products purchased from Defendants, the only cooling system Defendants actually delivered, after significant delay, failed to ever perform as represented by Defendants or perform at all.

45.    The Defendants received notice of the breach of warranty when Plaintiffs attempted to cause the Defendant seller's system to perform as represented, without success.

46.    The Defendants breached the implied warranty of fitness for a particular purpose as contained in M.S. § 336.2-315, and as a direct and proximate cause of the breach of warranty alleged, Plaintiff sustained and will continue to sustain general and special damages, including but not limited to, past and future expenses for Plaintiff's

9

purchased immersion cooling system, lost economic opportunity from Bitcoin cryptocurrency mining or other computing uses, and other economic damages.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES OF FACT HEREIN.**

THEREFORE, Plaintiff Xanadu Media LLC prays for judgment against Defendants as follows:

A. As to Counts I, II, III and IV a money judgment against Defendants in an amount to be proven at trial.

B. Together with costs, including, where applicable, reasonable attorneys' fees, and prejudgment interest;

C. Defendants Edge Data Solutions, Daniel Wong, Delray Wannemacher and Clay Seibert perpetrated their fraud in such a manner as to subject Plaintiff to these deprivations in such a manner as to render them liable for punitive damages in an amount to be proven at trial.

D. For such other and further relief as this Court deems just and equitable.

Dated: August 15, 2024

**APPLEBAUM LAW FIRM**

/s/ Paul Applebaum
Paul Applebaum, #223098
First National Bank Building W1610
Saint Paul, Minnesota 55101
Fax: 651.222.2999
*paul@applebaumlawfirm.com*

11